JOURNAL ENTRY and OPINION
{¶ 1} William E. Mason appeals from a judgment of the domestic relations division of the common pleas court which granted Joan M. Mason's complaint for divorce, divided their marital property and debt, ordered Joan to pay William $1,500.00/month for 18 months in spousal support and William to pay Joan child support of $9,595.00/year, and entered a shared parenting plan. On appeal, William alleges the court erred in its allocation of parental rights and responsibilities, its determination of the duration of the marriage, its failure to order the sale of the marital residence, its award of spousal and child support, its division of marital property and debt, and its failure to award him attorney fees. For the following reasons, we dismiss the part of the appeal that relates to the issues concerning the marital residence and the temporary support arrearage and affirm the judgment of the court relating to the remaining issues.
 {¶ 2} The history of this case reveals that the parties were married on October 2, 1987 and four children were born of the union: William, Mary Catherine, and twins Abigail and Madeline. During the marriage, Joan earned more income than William. In 2001, she earned $127,000.00 plus a $20,000.00 bonus as COO for Ohio Health, while William, a project manager for the Great Northern Fence Company, earned $46,400.00, including automobile allowances. Both were involved in the care of their children. After their second child was born, they rearranged their work schedule to minimize their time away from the children: Joan would leave for work at 6:00 A.M. and return at 2:30 P.M., while William would leave for work at 9:30 A.M. and return at 5:00 P.M. When Joan traveled for work or participated in social events, William cared for the children. On March 24, 2000, after 12 years of marriage, Joan filed for divorce. The court granted the divorce, set the duration of the marriage from October 2, 1987, to March 24, 2000, the date Joan filed for divorce; divided marital property; awarded the marital home to Joan and half of the equity of the house to William; determined that William owed Joan $3,100.00 in temporary alimony arrearage; entered a shared parenting plan under which Joan has possession of the children during the school year and William during the summer; ordered Joan to pay William spousal support in the amount of $1,500.00/month for 18 months; and ordered William to pay Joan child support of $9,595.00 per year, which reflected a downward deviation of $2,001.00 from the child support worksheet due to William's possession of the children during the summer and also an upward adjustment of $1,595.00, which consisted of William's share of the children's private school tuition. The court also ordered Joan to pay 2/3 and William to pay 1/3 of the Guardian Ad Litem's fees, and ordered them to pay the balance of their respective attorney fees.
 {¶ 3} William now appeals,[1] raising nine assignments of error for our review. Joan moved to dismiss the third assignment of error, which relates to the marital residence, and the fifth assignment of error, which relates to temporary support arrearage, on the ground that William has accepted $36,972.00 from her, an amount which incorporated half of the equity in the marital home and William's temporary support arrearage, and that he has delivered an executed quit-claim deed to her counsel. We must therefore decide first whether the issues regarding the marital home and William's temporary support arrearage are moot on appeal.
 {¶ 4} In Gourash v. Gourash (Sept. 1999), Cuyahoga App. Nos. 71882 and 73971, we reviewed this exact issue and, on the authority of Blodgettv. Blodgett (1990), 49 Ohio St.3d 243, concluded that the wife's acceptance of payment in full of the cash award for division of marital property constituted a satisfaction of judgment and renders the issues regarding division of marital property moot.
 {¶ 5} Following these authorities, we likewise conclude that William's acceptance of payment which incorporated his award of half of the equity in the marital home and his temporary support arrearage renders his claims on appeal regarding these two issues moot.[2]
 {¶ 6} We now turn to the remaining assignments of error, the first of which states:
 {¶ 7} "THE TRIAL COURT ERRED IN ITS DETERMINATION OF THE ALLOCATION OF PARENTAL RIGHTS AND RESPONSIBILITIES."
 {¶ 8} William claims the court erred in failing to consider proper evidence in its allocation of parental rights and responsibilities. He argues that it ignored Dr. Huntsman's recommendation that the parents share possession of the children equally and also failed to consider his testimony that Joan traveled once a month for her work for three to four days at a time, when he would care for the children, and that he accepted his current position and decreased his work hours to accommodate his care of the children.
 {¶ 9} Joan asserts that the court had carefully considered all pertinent statutory factors in making its determination. The issue for our review then concerns whether the court erred in its allocation of parental rights and responsibilities.
 {¶ 10} We note at the outset that an appellate court must uphold the trial court's allocation of parental rights and responsibilities absent an abuse of discretion, which implies that the court's attitude is unreasonable, arbitrary, or unconscionable. See Masters v. Masters
(1994), 69 Ohio St.3d 83.
 {¶ 11} Regarding the factors a court must consider in determining the best interests of the child in the context of parental rights and responsibilities allocation, R.C. 3109.04(F) states, in relevant part:
 {¶ 12} "(1) In determining the best interest of a child * * * on an original decree allocating parental rights and responsibilities for the care of children * * *, the court shall consider all relevant factors, including, but not limited to:
 {¶ 13} "(a) The wishes of the child's parents regarding his care;
 {¶ 14} "(b) If the court has interviewed the child * * * regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 {¶ 15} "(c) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest;
 {¶ 16} "(d) The child's adjustment to his home, school, and community;
 {¶ 17} "(e) The mental and physical health of all persons involved in the situation;
 {¶ 18} "(f) The parent more likely to honor and facilitate visitation and companionship rights approved by the court;
 {¶ 19} "(g) Whether either parent has failed to make all child support payments * * *;
 {¶ 20} "(h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child * * *;
 {¶ 21} "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent his or her right to visitation in accordance with an order of the court;
 {¶ 22} "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.
 {¶ 23} "(2) In determining whether shared parenting is in the best interest of the children, the court shall consider all relevant factors, including, but not limited to, the factors enumerated in division (F)(1) of this section, * * * and all of the following factors:
 {¶ 24} "(a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;
 {¶ 25} "(b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;
 {¶ 26} "(c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence * * *;
 {¶ 27} "(d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting.
 {¶ 28} "(e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem."
 {¶ 29} Here, the record reflects that Dr. Huntsman, a clinical psychologist who had evaluated the parties and the children, recommended to the court that the parents' possession of the children should be equalized by allocating Joan the primary responsibility for the children during the school year and William that responsibility during the summer. In addition, Roberta Gallagher, a social worker who had counseled the children, recommended that Joan be made the residential parent. Furthermore, the childrens' Guardian Ad Litem, in her proposal for shared parenting plan and at trial, recommended that the primary possession of the children be given to Joan during the school year and William during the summer.
 {¶ 30} The record also reflects that the court made the following findings in its decision:
 {¶ 31} "* * * The Court finds that the terms and conditions set forth in the Guardian Ad Litem's Plan provide for the Plaintiff to have primary possession of the children during the school year, and for the Defendant to have primary possession of the children during the summer vacation. The Guardian Ad Litem, in her closing argument at trial, reiterated this position.
 {¶ 32} "The Court further finds that Nancy J. Huntsman, Ph.D., a psychologist in the Court's Family Conciliation Department, also recommended that the parties have shared parenting of the minor children, with the Plaintiff having primary possession of the children during the school year, and the Defendant having primary possession of the children during the summer vacation.
 {¶ 33} "The Court further finds that the Plaintiff and Defendant both have a close and positive relationship with the minor children. Furthermore, the minor children interact well with both of them. The Court finds that, during the marriage, and until these divorce proceedings were commenced, both parties were primary caregivers for the children at various times, but the Plaintiff organized the children's schedules, including their homework, and made almost all of the decisions regarding their activities, schooling, recreation, etc. The Defendant, however, acquiesced in this arrangement until the divorce was filed, at which time the Defendant began to oppose the Plaintiff on almost every issue concerning the children. Since that time, the parties have rarely agreed on anything related to the children and they are unable, at this point in time, to compromise their differences, even for the benefit of the children. For this reason, the Court finds, and Nancy Huntsman testified, that an equal fifty-fifty possession schedule would not be feasible. Although the Defendant testified that he and the Plaintiff would be able to cooperate with each other and reach agreement on child related issues, his conduct (and the Plaintiff's to a more limited extent) during the last 18 months, prove otherwise.
 {¶ 34} "The Court further finds that the Plaintiff has a strict, organized, no nonsense approach to raising the children. The Defendant, on the other hand, is the exact opposite, providing a less stringent, more laissez-faire approach to the children. While neither party's parenting style is more correct than the other, the Court finds that the Plaintiff's parenting style would work to the children's advantage during the school year when they need more structure in their lives, while the Defendant's parenting style would be more beneficial for the children during the summer vacation, when they are not inhibited by the regiment and requirements of school.
 {¶ 35} "The Court further finds, and Nancy Huntsman testified, that these parents' diametrically opposed styles of parenting would not provide the children with any continuity or stability in their lives, especially during the school year, if they were alternating households equally (50/50) on a weekly or biweekly basis, constantly going from one extreme (parenting style) to the other."
 {¶ 36} These findings by the court, while recognizing William's equal involvement in the care of the children, took into consideration the effects of William and Joan's different parenting styles, and adopted the recommendation by Dr. Huntsman, the social worker, and the Guardian Ad Litem. Accordingly, we do not perceive an abuse of discretion in the court's application of the pertinent statutory factors to the facts in this case. This assignment of error is not well taken.
 {¶ 37} The second assignment of error states:
 {¶ 38} "THE TRIAL COURT ERRED IN ITS DECISION TO USE THE DATE OF FILING OF THE PLAINTIFF'S COMPLAINT AS THE TERMINATION DATE OF THE MARRIAGE."
 {¶ 39} William claims the court erred in using the date of Joan's divorce filing as the termination date of the marriage.
 {¶ 40} R.C. 3105.171(A)(2) sets forth the method for determining the duration of marriage for the purposes of dividing marital property. It provides, in part:
 {¶ 41} "(2) "During the marriage" means whichever of the following is applicable:
 {¶ 42} "(a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation;
 {¶ 43} "(b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. * * *"
 {¶ 44} Thus, under subsection (a), the date of the marriage is presumed to be the commencement date for the marriage and the date of the final hearing is presumed to be the termination date. However, subsection (b) gives the trial court discretion to choose de facto dates when equitable. In order to achieve an equitable distribution of property, the trial court must be allowed to use alternative valuation dates where reasonable under the particular facts and circumstances of the case. SeeLanger v. Langer, 123 Ohio App.3d 348, appeal dismissed (1997),80 Ohio St.3d 1473. Furthermore, as we have stated in Gullia v. Gullia
(1994), 93 Ohio App.3d 653, 666, appeal dismissed (1994),70 Ohio St.3d 1409, the determination as to when to apply a valuation date other than the actual date of divorce is within the discretion of the trial court and cannot be disturbed on appeal absent a demonstration of an abuse of discretion.
 {¶ 45} Here, the record reflects that Joan and William continued to reside at their Westlake home following the divorce filing. However, Joan testified that she had ceased communicating with William since 1999, that she cancelled their joint credit card and opened her own checking account prior to her filing. She further testified that they ceased commingling their income after she filed for divorce and, subsequent to her request for support pendente lite, she and William entered into an agreement which prescribed their respective financial obligations: she paid all expenses associated with the house and the children while he contributed $1,500.00/month. Given this evidence, we conclude the court acted within its discretion when it utilized the date of filing as the de facto date of termination of marriage. Accord Gulliav. Gullia (1994), 93 Ohio App.3d 653 (the trial court should have used a de facto termination date of the marriage when the evidence shows that after the parties' separation, they had separate residences, separate business activities and utilized separate bank accounts. In addition, no attempt at reconciliation was made by either party.)
 {¶ 46} Accordingly, we reject this assignment of error. His fourth assignment of error states:
 {¶ 47} "THE TRIAL COURT ERRED IN ITS DIVISION OF JOAN M. MASON'S MARITAL CONTRIBUTIONS TO HER 401(K) AND 403(B) RETIREMENT PLANS."
 {¶ 48} William complains that the court erred in considering Joan's post-filling contributions to her retirement accounts as separate property and subtracting accordingly $13,342.00 from these retirement accounts before dividing them.
 {¶ 49} Here, the record reflects that Joan continued to contribute to her Fidelity retirement accounts following her divorce filing on March 24, 2000, in the amount of $952.97 per month. Given our determination that the court did not abuse its discretion in utilizing the de facto date of March 24, 2000 as the date of termination, we conclude the court properly deducted from marital property the sum of $13,342.00, which reflected Joan's contribution to her retirement accounts subsequent to the de facto date of termination. This assignment of error lacks merit.
 {¶ 50} The sixth assignment of error states:
 {¶ 51} "THE TRIAL COURT ERRED IN ITS DIVISION OF MARITAL DEBTS."
 {¶ 52} William contends that the balance of $4,300.00 owed to a leasing company relating to a 1996 Dodge Caravan that Joan drove during the marriage did not constitute a marital debt, but rather should be paid by Joan alone; he claims she drove the vehicle, turned the vehicle in early to the leasing company without his permission, caused excessive wear and tear as well as damages, and should have submitted the damages to the insurance company or sought warranty coverage. Joan maintains that the court properly required her to pay 2/3 and William to pay 1/3 of all marital debts, including this debt.
 {¶ 53} At trial, Joan testified that she had discussed this matter with William and decided to turn the leased vehicle in because it exceeded the permitted miles; William testified he also used the vehicle on occasions. Regarding this issue, the court determined that the balance owed on the vehicle to be a marital debt, finding that Joan neither intentionally nor negligently caused damages or excessive wear and tear to the vehicle; that Joan used this vehicle for transporting the children and for work, both marital purposes; and that William failed to substantiate his claim that any damages would have been covered by insurance or warranty. As our review of the record does not reveal errors in these findings, we affirm the court's inclusion of this debt as marital debt.
 {¶ 54} The seventh assignment of error states:
 {¶ 55} "THE TRIAL COURT ERRED IN ITS DETERMINATION OF CHILD SUPPORT."
 {¶ 56} William complains of the court's upward adjustment of $1,595.00 per year in his child support obligation to reflect his share of the children's annual parochial school tuition totaling $5,500.00. He maintains that the court should not have factored in the cost of private school tuition for the children in its calculation of child support; specifically, he argues that the new child support statute, R.C. 3119.05(F), which requires the court to issue a separate order for extraordinary expenses such as private education, did not come into effect until March 22, 2001, and therefore should not be retroactively applied to this instant case, filed on March 24, 2000.
 {¶ 57} We summarily reject William's claim that the court retroactively applied the statute, as the record shows that the court's September 19, 2001 judgment required William to pay child support commencing October 1, 2001, when the new statute was already in effect. Consequently, we overrule this assignment of error.
 {¶ 58} "THE TRIAL COURT ERRED IN ITS DETERMINATION OF SPOUSAL SUPPORT."
 {¶ 59} William maintains that the court failed to give proper consideration to the disparity in his and Joan's incomes in determining the amount of spousal support to which he is entitled. The trial court's authority to award spousal support is found in R.C. 3105.18, which sets forth factors the court must consider. Kaechele v. Kaechele (1988),35 Ohio St.3d 93, 95. The court must provide a factual basis or rationale which supports the award of spousal support. Id., at paragraph two of the syllabus. See, also, Moro v. Moro (1990), 68 Ohio App.3d 630, 635.
 {¶ 60} The trial court enjoys broad discretion in awarding spousal support, and we will not reverse such a decision absent an unreasonable, arbitrary, or unconscionable attitude exhibited by the court. See, e.g.,Macko v. Macko (Feb. 26, 1998), Cuyahoga App. No. 72339, citing Babka v.Babka (1992), 83 Ohio App.3d 428, 432,, citing Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 218; Cherry v. Cherry (1981), 66 Ohio St.2d 348, paragraph two of the syllabus.
 {¶ 61} R.C. 3105.18(C)(1) delineates factors for consideration in a court's determination of spousal support:
 {¶ 62} "(C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
 {¶ 63} "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 [3105.17.1] of the Revised Code;
 {¶ 64} "(b) The relative earning abilities of the parties;
 {¶ 65} "(c) The ages and the physical, mental, and emotional conditions of the parties;
 {¶ 66} "(d) The retirement benefits of the parties;
 {¶ 67} "(e) The duration of the marriage;
 {¶ 68} "(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 {¶ 69} "(g) The standard of living of the parties established during the marriage;
 {¶ 70} "(h) The relative extent of education of the parties;
 {¶ 71} "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 {¶ 72} "(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 {¶ 73} "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 {¶ 74} "(l) The tax consequences, for each party, of an award of spousal support;
 {¶ 75} "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 {¶ 76} "(n) Any other factor that the court expressly finds to be relevant and equitable."
 {¶ 77} Here, the court awarded William $1,500.00/month in spousal support for eighteen months, after noting the following:
 {¶ 78} "* * * [T]he Defendant testified that he will need approximately one full year after the divorce is granted in order to earn more money. He testified that his current job does not require him to work 40 hours per week, that he accepted it because it gave him more free time to be with his family, that he could probably make more money with a different company in the fence industry, and that he could make even more money than that if he looked for a job in a different occupation altogether. He has a college degree, sales experience, management experience, and expertise in the fence industry. He admits he has not looked for another job making more money even though he has never gotten a raise, a bonus, or a promotion at his current place of employment.
 {¶ 79} "The Court finds that, after consideration of all of the factors set forth in Ohio Revised Code § 3105.18, including the length of the marriage, the parties' ages, incomes, assets, and liabilities, the Defendant is in need of, and entitled to, an award of sustenance spousal support from the Plaintiff * * *."
 {¶ 80} William bases his contention that the court should have awarded him more spousal support solely on the disparity of his and Joan's income and the duration of their marriage. We note, as the trial court did, that although Joan earns substantially more money than William, William possesses a college degree, management experience, and expertise in the fence industry. Most importantly, we note that he has worked throughout their marriage, earning $46,400.00 in 2001 in a management position. He testified that it would take up to a year for him to "acquaint [himself] back into the business and start advancing from that point." Thus, we conclude the court acted within its discretion when it, after considering the relevant statutory factors to the facts in this case, found it appropriate and reasonable to award William $1,500.00 per month of spousal support for 18 months. This assignment of error is not well taken.
 {¶ 81} "THE TRIAL COURT FAILED TO AWARD WILLIAM E. MASON HIS REASONABLE ATTORNEY FEES."
 {¶ 82} William contends that the court erred in not awarding him reasonable attorney fees.
 {¶ 83} As a general matter, attorney fees are primarily the function of the party who retains the attorney. Farley v. Farley (1994), 97 Ohio App.3d 351, 358.
 {¶ 84} However, the law allows one party to a divorce action under certain conditions to be required to pay for all or some of the other party's legal fees; R.C. 3105.18(H) states:
 {¶ 85} "(H) In divorce or legal separation proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings, including, but not limited to, any appeal, any proceeding arising from a motion to modify a prior order or decree, and any proceeding to enforce a prior order or decree, if it determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees." (Emphasis added.)
 {¶ 86} Our review of attorney fee awards is limited to determining whether (1) the factual considerations upon which the award was based are supported by the manifest weight of the evidence or (2) the domestic relations court abused its discretion. See Gourash, supra, citing Oateyv. Oatey (1992), 83 Ohio App.3d 251.
 {¶ 87} Here, the court stated the following regarding its decision on the issue of attorney fees:
 {¶ 88} "The Court further finds that the Plaintiff's attorney's fees total $23,382.00 and the Defendant's attorney's fees total $26,784.00. The Court finds both party's [sic] fees to be reasonable and necessary under the facts and circumstances of this case. The Plaintiff has a balance due on her fees in the amount of $18,749.00 and the Defendant has a balance due on his fees in the amount of $11,784.00. The Court finds that, after consideration of the parties' assets, liabilities, and incomes, neither party should contribute to the fees of the other party."
 {¶ 89} Our reading of R.C. 3105.18(H) indicates that the statutepermits the court to award attorney fees if it determines that the payor spouse has the ability to pay. Thus, in accordance with the statute, the court must make that express determination when it exercises its discretion to award attorney fees. The statute, however, does not require the court to award attorney fees whenever the payor spouse possesses the ability to pay.
 {¶ 90} As to the consideration of whether either party would be prevented from fully litigating that party's rights without an award of attorney fees, the record reflects that neither William nor his attorney presented evidence that he would be prevented from fully litigating his rights or protecting his interests without an award of attorney fees; in fact, this issue had not been raised at trial to afford the court an opportunity for any determination.[3] As we do not perceive an abuse of discretion by the court in requiring Joan and William to pay their own attorney fees, we reject this assignment of error.
 {¶ 91} On the basis of the foregoing, we dismiss this appeal in part and affirm the judgment of the court.
Appeal dismissed in part and judgment affirmed.
It is ordered that appellee recover of appellant her costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MICHAEL J. CORRIGAN, P.J., and JAMES J. SWEENEY, J., CONCUR.
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).
[1] The court filed its judgment entry of divorce twice, on September 19, 2001 and again on October 16, 2001; William filed a notice of appeal from both journal entries, Appeals Nos. 80368 and 80407, respectively, and we have consolidated these two appeals.
[2] We distinguish this case from Leff v. Leff (Mar. 2, 2002), Cuyahoga App. No. 75551, where the spouse awarded property division and attorney fees took steps to enforce these awards but had not obtained any cash payment and we concluded her cross-appeal was not rendered moot.
[3] We distinguish this case from Abernethy v. Abernethy, Cuyahoga App. No. 80406, 2002-Ohio-4193, and Oatey, supra, where we reversed judgments awarding attorney fees on the ground that the court must expressly decide whether a spouse would be prevented from fully litigating his or her rights. In Oatey, we explained specifically that the court erred because it "did not consider whether plaintiff would be prevented from fully litigating her rights without an award of reasonable interim attorney fees in light of her counsel's statement at the final hearing that counsel would continue to provide services without payment until the conclusion of the case."